CARRIE E. BAYARD, APPELLEE, V. CITY OF FRANKLIN, APPELLANT.

FILED APRIL 13, 1909.   No. 15,630.

Damages: QUESTION FOR JURY. There is no fixed rule for the measure of damages occasioned by pain. The amount is to be determined by the circumstances of each case, and is a matter peculiarly within the province of the jury.

APPEAL from the district court for Franklin county: ED L. ADAMS, JUDGE. *Affirmed.*

*H. W. Short* and *Adams & Adams,* for appellant.

*W. H. Miller* and *George A. Adams, contra.*

EPPERSON, C.

Along one of the public streets of the defendant city there is a sidewalk four feet wide, constructed principally

of cement.   In this, however, is a section, ten feet long, made of wood, which passes over a depression in the ground.   This wooden section rests at either end upon shelves or shoulders built in the cement walk in such a manner that the surfaces of the different parts are upon a level.   The wooden section is constructed by the nailing of ordinary six-inch fence boards to four two-by-four runners, extending from shoulder to shoulder in the cement walks.   On November 10, 1906, the plaintiff and several companions were passing over this walk, she and two others walking abreast.   Plaintiff was upon the left, and as they approached the wooden section, which was narrower than the cement walk, she dropped a few inches to the rear.   The weight of her companions upon the wooden walk, by reason of its defective condition, elevated the left side at the corner which plaintiff was approaching in such a way that plaintiff's left foot caught under the wooden walk, which immediately pressed down, holding her foot and causing her to fall, whereby her foot was crushed and severely injured. Plaintiff instituted this action against the defendant to recover general damages, alleging that the defendant was negligent in maintaining this sidewalk in a defective and dangerous condition.   She recovered a verdict and judgment for $3,000, from which the defendant has appealed.

The evidence is sufficient to justify a finding that the wooden section of the sidewalk was in a defective condition and dangerous, and that the city authorities knew of its condition.   No contributory negligence was shown. Plaintiff was 24 years of age, and at the time of the accident was engaged in teaching in the public schools of the defendant city, receiving $40 a month as wages.   For four days, although her foot was very sore, only household remedies were applied.   On the fourth day after the accident she visited a physician and received treatment. For three weeks after the day of the accident she remained in her room, but for two of the three weeks her school was quarantined.   Throughout the fourth week

the plaintiff attended to her duties as a teacher. She was confined to her room during the fifth week, and then went to her home in Lincoln, where she remained for about a month. She then returned to her school and taught the remainder of the school year. In September, 1907, about a month before the trial, she entered upon a year's school work in the village of Rokeby. The evidence does not show that plaintiff lost any wages or that her earning capacity has been diminished by reason of the accident, except for a few weeks, as above indicated. The evidence shows definitely that the medical services procured by plaintiff were of the value of $50. From these facts it is apparent that the principal element of damages entering into the verdict was such as plaintiff sustained by reason of pain and suffering, not only prior to the trial, but such as she will suffer in the future as a result of the injury.

The defendant contends that the verdict was excessive, as plaintiff's earning capacity was not shown to have been diminished. The evidence very clearly indicates that her pain and suffering were very great, and such as would usually drive a person of ordinary courage from the field of activity. Although the plaintiff continued teaching, yet she did so under the greatest of pain and inconvenience. During her school work in the defendant city, after the accident, she was required to use a crutch for several months. She was required to keep her foot at rest, and to make this possible it was kept for several months in a plaster of paris cast, or was supported by rubber adhesive casts, and in addition thereto, while in the schoolroom, her foot was kept elevated by resting the same upon a small box provided for that purpose. Plaintiff suffered great pain at night, the weight of the bedclothes causing great distress. She found it necessary frequently to rub the injured member in order to bring about the circulation of blood, and frequently called upon her friends to assist her. The injury was of such a nature that she could not place her heel upon the floor naturally, but was required to bear her weight, after discarding the crutches,

upon the front part of her foot. The plaintiff has not been able to walk without limping nor without pain. At the time of the trial she still suffered. Her foot was swollen, and she was required to sit a great deal of the time in order to favor the injured member. The plaintiff's testimony regarding the pain and suffering was corroborated by numerous witnesses testifying to facts relative to her conduct, and also by medical experts who testified to conditions which would indicate to any reasonable mind that pain and suffering were present. The trial was had eleven months after the injury, and the evidence as to the future pain and suffering was such as to require the submission of that question to the jury. During a part of the time before the trial plaintiff had been treated by Dr. Reynolds, of Lincoln, who testified in part in reference to the injury as follows: "Well, it has progressed slowly, and yet it has made a little progress. * * * I presume the healing has taken place, but the injury, in all probability, will never be fully recovered. * * * She has not had time enough for the general average of injuries to the bones and ligaments to get to about what we call the curative stage, and yet I would say, in an injury like hers, the chances are she never will be entirely cured; that is, it will be a weak foot. It will be one she may go along fairly well on, if she steps just right; * * * but let her make a misstep, or turn her foot on uneven ground, or something like that, and she will immediately know she is having trouble with it, and that may last a lifetime. * * * She could not do anything like what we call manual labor, or something that kept her on her feet constantly, without, it in all probability, breaking down. It would be so excruciating. * * * There is a good bit of suffering with it, and the suffering is prolonged for a period of years. * * * I do not think she is well yet, and won't be for a good long time. If I was going to say when she would be well, she would not be well entirely, so the foot would be like the other, for three to five years. * * * Q. And not sure she ever will be

entirely well?   A. No; not sure, but that will be her
weak spot." Dr. Ella Sumners, who had also examined
the plaintiff's injured foot, was asked if in her judgment
the limb will ever be sound. She answered: "Why, it
should, if it was just a common sprain. It should have
been well by this time. I think it is very doubtful if she
ever regains the full use of the ankle and foot." Dr. James
Sumner testified that he did not think that it would ever
fully recover. There was no evidence introduced on the
part of the defendant relative to the nature of the injury.
Although the physicians who examined the foot and tes-
tified were unable to state definitely as to the exact na-
ture of the injury, whether it was a sprain or a fracture,
or both, yet their inability to do so does not reflect the
least discredit upon their testimony, for they fully ex-
plained that, in an injury of this nature, it was practi-
cally impossible for one to tell its full extent and exact
nature.

There is no fixed rule by which the amount of damages
occasioned by pain and suffering may be measured. It is
a matter peculiarly within the province of the jury, and
unless the verdict is clearly excessive it will not be dis-
turbed by the court. Especially may this be said of an
appellate court, which considers the case only after the
trial court, who heard the case, saw the parties and the
witnesses, who knew the jury, and has given his sanction
to the verdict by rendering judgment thereon. It is a
well-recognized law that, where the injuries are such that
they are reasonably certain to continue to cause future
pain and suffering, they are proper elements of damage.
The evidence in this case showing, as it does, severe pain
and suffering for a period of eleven months, and showing
further that plaintiff will remain for some time in a
crippled condition, with continued pain and suffering,
we cannot say that the verdict is excessive. On the other
hand, it appears to us as fair and adequate.

We recommend that the judgment of the district court
be affirmed.

GOOD and CALKINS, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.